[Cite as *State v. VanMeter*, 2016-Ohio-5191.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| STATE OF OHIO | C.A. No. 14CA0058-M |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| CHRISTIAN VANMETER | COURT OF COMMON PLEAS COUNTY OF MEDINA, OHIO |
| Appellant | CASE No. 13 CR 0514 |

DECISION AND JOURNAL ENTRY

Dated: August 1, 2016

WHITMORE, Judge.

{¶1} Appellant, Christian VanMeter, appeals his convictions by the Medina County Court of Common Pleas. This Court affirms.

I

{¶2} On Friday, June 28, 2013, Mr. VanMeter's infant son started showing signs that he was in pain. The baby's mother found that she could only console him by holding him close to her body with her arm supporting his legs. Believing that the baby's hips were out of alignment, she took him to a chiropractor the following morning, as was their pattern. Over the course of that weekend, however, the baby displayed signs of increasing distress. The following Monday, the family returned to the chiropractor, who told them that the baby needed immediate medical attention.

{¶3} The baby was diagnosed with a spiral fracture of the femur at Akron Children's Hospital. Suspecting that the fracture was a result of abuse, the staff performed additional tests

and discovered that the baby had two subdural hemorrhages, one recent and one that dated back several months. The baby was temporarily removed from his parents' custody, and Mr. VanMeter was charged with felonious assault in violation of R.C. 2903.11(A)(1) and endangering children in violation of R.C. 2919.22(A). A jury found him guilty of both offenses. The trial court merged Mr. VanMeter's convictions and sentenced him to four years in prison. This appeal followed.

II

**Assignment of Error Number One**

THE TRIAL COURT ERRED AS THERE WAS INSUFFICIENT EVIDENCE PRESENTED BY THE STATE OF OHIO TO SUPPORT THE DEFENDANT'S CONVICTION OF FELONIOUS ASSAULT AND ENDANGERING CHILDREN.

{¶4} In his first assignment of error, Mr. VanMeter has argued that there is insufficient evidence that he is the person who committed the crimes at issue. In the alternative, he has argued that there is insufficient evidence that he acted with the mental states required to commit felonious assault or endangering children. We disagree.

{¶5} "Whether a conviction is supported by sufficient evidence is a question of law that this Court reviews de novo." *State v. Williams*, 9th Dist. Summit No. 24731, 2009–Ohio–6955, ¶ 18, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). The relevant inquiry is whether the prosecution has met its burden of production by presenting sufficient evidence to sustain a conviction. *Thompkins* at 390 (Cook, J., concurring). In reviewing the evidence, we do not evaluate credibility, and we make all reasonable inferences in favor of the State. *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991). The State's evidence is sufficient if it allows the trier of fact to reasonably conclude that the essential elements of the crime were proven beyond a reasonable doubt. *Id*. Like any other element of an offense, identity may be established through

direct or circumstantial evidence. *State v. Flynn*, 9th Dist. Medina No. 06CA0096-M, 2007-Ohio-6210, ¶ 12, citing *State v. Gorgan*, 9th Dist. Medina No. 1824, 1990 WL 1771, *1 (Jan. 10, 1990).

{¶6} R.C. 2903.11(A), which prohibits felonious assault, provides that no one "shall knowingly * * * [c]ause serious physical harm to another[.]" Serious physical harm includes:

(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;

(b) Any physical harm that carries a substantial risk of death;

(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;

(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;

(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.

R.C. 2901.01(A)(5). "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist." R.C. 2901.22(B).

{¶7} Endangering children is prohibited by R.C. 2919.22(A), which prohibits any person who is the parent of a child under eighteen years of age from creating a substantial risk to the health or safety of the child by violating a duty of care, protection, or support. Endangering children is a felony of the third degree when it results in serious physical harm to the child. R.C. 2919.22(E)(2)(c). Although R.C. 2919.22(A) does not specify the degree of culpability required to commit the offense, the Ohio Supreme Court has concluded that "[t]he existence of the culpable mental state of recklessness is an essential element of the crime of endangering children[.]" *State v. McGee*, 79 Ohio St.3d 193 (1997), syllabus.

{¶8} Dr. Daryl Steiner, who examined the baby after he was taken to the emergency room on July 1, 2013, testified that the baby had suffered a spiral fracture to the femur. Dr. Steiner explained that fractures in very young children generally raise suspicion because, due to the fact that young children are not mobile, fractures require "a specific traumatic event." He also explained that a spiral fracture is caused not by blunt force, but by "twisting around the long axis of the bone." In summary, he testified that:

> a fracture of the femur is a traumatic event in excess of routine handling. A femur fracture did not occur with just routine handling and play with the child. There's a force more notable, more powerful, more forceful than just routine handling of children and routine play with children. If routine play caused fractures, we'd see fractures -- that's all we'd see. But these are not very common injuries.

According to Dr. Steiner's testimony, neither parent in this case offered an explanation consistent with the degree of the baby's injury.

{¶9} Mother testified that on the morning of Friday, June 28, 2013, the baby was playing, smiling, and laughing. She put him down for a nap on the bed that she shared with Mr. VanMeter between 9:00 and 9:30 a.m., leaving Mr. VanMeter alone in the upstairs room with the baby. Mother testified that after her sister suggested that she go back upstairs, she found Mr. VanMeter holding the baby and observed that he was the most frustrated she had ever seen him with the child. She recalled that Mr. VanMeter had the baby in his arms and the baby was screaming. Mr. VanMeter then handed the baby to Mother, telling her that he could not get him to stop crying. Mother testified that she noticed afterward that the baby, who was usually easy to console, seemed to be in pain. According to her recollection, he refused a bottle and only calmed down when she held him close against her with her arm supporting his legs. She noted that when she moved, "[h]e would scream. He would scream like he was – you know, something was hurting him." She testified that she had "never seen him scream and cry like he did."

{¶10} Mother's sister also testified. She recalled that on Friday morning, she heard the baby crying and went upstairs to check on him. She testified that she found Mr. VanMeter holding the baby and "shaking him kind of hard * * * like he had a good grip on his hands and seemed like he was really irritated." She characterized the baby's crying as "not * * * normal," as if he was in pain.

{¶11} Based on this testimony, the jury could reasonably conclude that the baby sustained a spiral fracture to his femur during the period of time that he was solely in the care of Mr. VanMeter. In addition, the jury could reasonably conclude that the injury occurred because of a force exerted upon the baby beyond the limits of normal play and handling and that VanMeter was aware, regardless of his intent, that the force would probably result in injury to the infant. Accordingly, the jury's conclusion that Mr. VanMeter caused the baby's injury and the conclusion that he acted knowingly are supported by sufficient evidence.

{¶12} Mr. VanMeter's first assignment of error is overruled.

### Assignment of Error Number Two

THE JURY'S FINDING OF GUILTY ON THE CHARGE[S] OF FELONIOUS ASSAULT AND ENDANGERING CHILDREN WAS AGAINST THE MANIFEST WEIGHT OF [THE] EVIDENCE.

{¶13} Mr. VanMeter's second assignment of error is that his convictions for felonious assault and endangering children are against the manifest weight of the evidence. We disagree.

{¶14} When considering whether a conviction is against the manifest weight of the evidence, this Court must:

> review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). A reversal on this basis is reserved for the exceptional case in which the evidence weighs heavily against the conviction. *Id.*, citing *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

{¶15} Mr. VanMeter has argued that Mother and her sister vacillated in their testimony and that their credibility was limited because they provided prior inconsistent statements to the police. For example, Mother's description of the baby's behavior immediately after she took him from Mr. VanMeter varied with respect to the intensity of his crying and apparent distress. Neither Mother nor her sister testified that they believed the baby's leg was broken, and Mother testified that she sought treatment from the family's chiropractor because she believed that the baby's hip was out of alignment.

{¶16} Mother's testimony about what happened at the chiropractor's office also differed from earlier statements. At trial, she testified that during the baby's appointment on Saturday, the chiropractor, Dr. Lash, did not remove the baby from his carseat or manipulate his legs. On cross-examination, Mother acknowledged that she had previously stated that Dr. Lash did remove the baby from the carseat and had bent his legs. Dr. Lash testified that Mother held the baby during the visit and that he used "a soft technique" to adjust the baby's spine. He denied touching the right leg in any manner, specifically observing that bending and extending the leg would cause extreme pain to someone with a broken femur. Mother also testified that the baby was in pain before the visit to Dr. Lash, and any contact with the baby's legs seemed to aggravate the pain that was already present. Notably, Mother did not describe any behavior on Dr. Lash's part that would rise to the level of force described by Dr. Steiner as necessary to cause a spiral fracture of the femur.

{¶17} Although Mother and her sister did testify about some details differently than the statements they provided earlier, the testimony at trial was consistent on several points. On the morning of Friday, June 28, 2013, the baby woke without pain and was not in distress before his nap. After Mother took the baby from Mr. VanMeter, the baby appeared to be in pain and could only be consoled by being held close to the body with his legs supported. Witnesses testified that the baby's pain continued unabated through the weekend, and when another chiropractor saw him on Monday morning, he observed that "the leg was red, swollen, and extremely distended" and advised the family to seek medical treatment quickly.

{¶18} Mr. VanMeter has also argued that the weight of the evidence does not support the conclusion that Mr. VanMeter violated a duty of care toward the baby for purposes of R.C. 2919.22(A). Specifically, he has argued that the evidence does not support the conclusion that he failed to obtain medical treatment for the baby because Mother was primarily responsible for making health care decisions. This argument is misplaced because his conviction for endangering children is based on evidence that he failed in a duty of care by causing the injury in the first instance.

{¶19} Mr. VanMeter's convictions for felonious assault and endangering children are not against the manifest weight of the evidence, and his second assignment of error is overruled.

III

{¶20} Mr. VanMeter's assignments of error are overruled. The judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
BETH WHITMORE
FOR THE COURT


CARR, P. J.
MOORE, J.
CONCUR.


APPEARANCES:

KRISTOPHER K. AUPPERLE, Attorney at Law, for Appellant.

DEAN HOLMAN, Prosecuting Attorney, and MATTHEW A. KERN, Assistant Prosecuting Attorney, for Appellee.